# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

THE GROVE ASSISTED LIVING, LLC,   )
                                          )
                                          )
       Plaintiff,                  )
                                          )
vs.                                   )     CASE NO.  4:16CV1783 HEA
                                          )
CITY OF FRONTENAC, MISSOURI,    )
et al.,                                  )
                                          )
       Defendants.         )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 3]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be granted.

### Introduction

Plaintiff owns land in the City of Frontenac, Missouri, which it wishes to develop. Plaintiff filed three applications with the City of Frontenac seeking to have the zoning classification of its property changed to allow for the development of residential villas and a senior living residential community including an assisted living facility. Plaintiff brought this suit in state court seeking a declaratory judgment, and money damages under 42 U.S.C. § 1983. Defendants removed. On April 6, 2017, the Court remanded Count I to the State Court as the state claim

substantially predominated over the federal claim; the Court declined to exercise supplemental jurisdiction over that claim.

## Facts and Background

Plaintiff's State Petition alleges:

Plaintiff is a limited liability company organized and existing under the laws of the State of Missouri. Defendant City of Frontenac, Missouri ["Defendant City" or "Frontenac"] is a municipal corporation, a fourth class city and a political subdivision of the State of Missouri. Defendant Keith Krieg ["Mayor"] was acting as the Mayor for Defendant City. Defendants Chris Kehr, Tom O'Brien, Margot Martin, Bud Guest, John T. O'Cormell, Mike Schoedel, David Bray and Brian Warner at one time or another voted on the matters described herein as members of the Frontenac Board of Aldermen ["Board"].

The approximately 9.6 acre property whose zoning classification is the subject of the case at bar consists of four contiguous parcels of St. Louis County real property situated within the corporate boundaries of the City of Frontenac, Missouri ["Subject Property"], described as follows:

PARCEL ONE
10601 Clayton Road (5 acres)
St. Louis County Locator No. 20N640182

PARCEL TWO
10601A Clayton Road (2.39 acres)
St. Louis County Locator No. 20N640261

PARCEL THREE
10601B Clayton Road (0.71 acres)
St. Louis County Locator No. 20N640281

PARCEL FOUR
10635 Clayton Road (0.95 acres)
St. Louis County Locator No. 20N640142

The Subject Property is situated within a rectangle bounded to the west by Spoede Road and certain residential property described below (in Paragraph 10), to the north by Interstate 64, to the east by the site of the City Hall and Public Works complex of Defendant City (10555 Clayton Road - St. Louis County Locator No. 20M430261), and to the south by Clayton Road.

The property adjacent to the northern boundary of the Subject Property is Interstate 64, an interstate highway which is part of the National Highway System of the United States. The property adjacent to the southern boundary of the Subject Property is Clayton Road. The property immediately to the east of the Subject Property is the approximately 2.72 acre site of the Frontenac City Hall and Public Works complex (10555 Clayton Road - St. Louis County Locator No. 20M430261). The zoning district regulation assigned to this 2.72 acre parcel by Defendant City is "R-1" Residential.

The property immediately to the west of the Subject Property, and to the East of South Spoede Road, consists of five residential parcels which are described as follows:

PARCEL "A"
1440 S. Spoede Road (1.04 acres)
St. Louis County Locator No. 20N640308

PARCEL "B"
1412 S. Spoede Road (1.95 acres)
St. Louis County Locator No. 20N640317

PARCEL "C"
1408 S. Spoede Road (0.93 acres)
St. Louis County Locator No. 20N640243

PARCEL "D"
1400 S. Spoede Road (1 acre)
St. Louis County Locator No. 20N640362

PARCEL "E"
1396 S. Spoede Road (1 acre)
St. Louis County Locator No. 19N320280

The original zoning district classification assigned to each of these residential parcels by Defendant City was "R-1" residential. The City subsequently changed the zoning district classification to "R-3" Villa Residence in 2016.

During the period between approximately 1935 and 2011, the Subject Property served as the site of Ladue Early Childhood Center, including a school building, a parking lot, and a soccer field. Since approximately June 2011, the Subject Property has been vacant due to the construction, by the Ladue School District, of a new Ladue Early Childhood Center at a Ladue Road property in Creve Coeur purchased by the School District in 2010.

Following the Ladue School District's vacation of the Subject Property in June 2011, the School District received an offer from the Sansone Group proposing a mixed-use development that would incorporate all of the property between Clayton Road, Spoede Road, Interstate 64, and the Frontenac City Hall / Public Works complex property. Uses for the Subject Property considered by the Sansone Group included retail space, restaurants, office space, a lifetime fitness center and senior housing. In response to local opposition to the commercial nature of the project, the Sansone proposal was not submitted to the City.

Following the vacation of the Subject Property by the Ladue School District in June 2011, Defendant City entered into a contract with PGA V Planners to provide a planning analysis of the rectangular area of the City of Frontenac bounded on the west by Spoede Road, on the South by Clayton Road, on the east by the site of the Frontenac City Hall, and on the north by Interstate 64. On September 28, 2012, PGAV Planners issued a seventeen-page "Clayton & Spoede Land Use Analysis Memorandum", which included the following comment regarding possible residential redevelopment of the Subject Property:

> "The current zoning of the Area as R-1, One Acre Residential, is certainly a plausible scenario for the Area given the proximity of large-lot residential uses to the west and south. However, it is one that is not likely to make economic or market sense. The costs associated with demolition of the School District buildings will be substantial (even if there are no environmental issues to contend with) and the topographic change means that houses developed on the northern section of the Area will be in a relative "hole" unless there is substantial fill brought on to the site. We also

do not believe that lots which back to the highway and the sound wall along it will be particularly desirable for the type and value of the homes that would need to be built.

The Comprehensive Plan seems to recognize the need to treat this location as unique. The Land Use Plan designates the Area as "Single Family Residential- Planned". Page 32 of the Plan discusses the need to provide alternative housing types, particularly for existing residents who want to downsize but remain in the City. Villa-style units are also discussed on that page, as well as the need to create Planned Residential Development zoning provisions.

We believe that development of a mix of high-quality housing types that might appeal to both seniors and empty nesters could be a good use of the Area. Again, we would encourage the City to consider providing for higher density housing that might include a "Gatesworth" style development on the northern part of the site built on top of a parking structure, with lower-density villa or townhouse style units on the southern half of the Area. This would provide a mix of higher-end housing commensurate with the other housing quality and type in the City."

Plaintiff is the owner under contract of the Subject Property since May 23, 2016. Prior to May 23, 2016 during the period of Plaintiff's 1st Rezoning Application and Plaintiffs 2nd Rezoning Application, Plaintiff was an assignee of Pulte Homes of St. Louis, LLC ["Pulte"], the owner under contract of the Subject Property.

On May 5, 2014, George Stock and Associates Consulting Engineers, Inc. ["Stock"], as agent for Plaintiff, filed an "Application" with Defendant seeking to have the zoning classification of the entire Subject Property, together with Parcels D and E changed from "R-1" Residential to "PD" Planned Development Residential ["1st Rezoning Application"].  22. The purpose of the requested

rezoning identified on the 1st Rezoning Application was development of "a residential community with thirty (30) Villas and Thirty-Six (36) Townhomes" to be known as "Frontenac Square", and an 86-bed Assisted Living Facility to be known as "The Grove in Frontenac".

Section 405.220 of Defendant City's Zoning Regulations permits "persons or entities having an ownership interest in properties within a particular zoning district" to "amend, supplement, change, modify or repeal the boundaries, restrictions and regulations" established by Defendant City's Zoning Regulations to petition Defendant City. According to Sections 405.040 and 405.100 of Defendant City's Zoning Regulations, the minimum lot size "per dwelling unit' within the "R-1" Residential zoning district is one ( 1) acre.

As an outgrowth of Defendant City's adoption of the 2006 Comprehensive Plan for Frontenac, whose recommendations were based on resident input, Section 405.090 of the Frontenac City Code was revised to include a "Planned Development Residential" (PDR) District designation which expressly recognized "single family attached villas", "single family attached townhomes", and "senior living community (when the size and character of the development is compatible to the surrounding uses)" as permitted uses. As part of the same revision of Section 405.090, a "senior living community", when the size and character of the development is compatible to the surrounding uses, was also recognized as a

permitted use in the PDMXD "Planned Mixed Development" zoning district classification.

Pursuant to Section 405.220 of Defendant City's Zoning Regulation, Plaintiffs 1st Rezoning Application was initially submitted to the Planning and Zoning Commission of Defendant City (the "P&Z Commission"] for its recommendations and report.

Plaintiff's 1st Rezoning Application was considered at the public meetings of Defendant City's P&Z Commission on the following dates: June 12, 2014; June 24, 2014; July 22, 2014; August 26, 2014; September 23, 2014; November 12, 2014; and December 9, 2014.

During the period between June 12, 2014 and December 9, 2014, Plaintiffs Proposed Development was revised and amended several times. As of December 9, 2014, the Proposed Development contemplated a development with 30 (thirty) villas, 24 (twenty four) townhomes, and an 86 (eighty six) bed Assisted Living Facility.

On November 6, 2014, Defendant City received a Memorandum (regarding the requested rezoning and proposed redevelopment of the Subject Property by Plaintiff and Pulte), prepared by Development Strategies (11/6/14), which contains the following findings:

"1. The existing school building is not viable for reuse and redevelopment for institutional uses given assumed acquisition and redevelopment costs.

2. Mixed use would be the highest and best reuse of the property but the community is seeking residential that is in accordance with the Comprehensive Plan.
3. Developing the property for single family homes on one acre lots would require sale prices in excess of $2 million, which would not be reasonable given the existing traffic, highway noise, and non-residential nature of much of the neighboring development.
4. The density and quality of proposed residential development is appropriate and consistent with similar residential developments in West County.
5. The proposed villas and townhouses will fill a need for housing products that are not currently available in Frontenac.
6. The parking, as proposed for the villas and townhomes, meets industry and local standards for this type of development.
7. The parking for the proposed assisted living facility is appropriate, assuming formal agreements are in place to handle additional parking demand for special events."

At its December 9, 2014 meeting, the P&Z Commission of Defendant City voted 5 in favor to 1 opposed to recommend approval of the Application by the Board.

Pursuant to Section 405.090 of Defendant City's Zoning Regulations, the P&Z Commission of Defendant City prepared a written report of its findings with respect to Plaintiff's Rezoning Application, which included several "conditions" upon which the recommendation of the Rezoning Application was predicated.

Pursuant to Section 405.220 of Defendant City's Zoning Regulation, Plaintiffs 1ˢᵗ Rezoning Application was subsequently forwarded to the Board of Defendant City for its review, and vote with respect to approval or denial.

Plaintiff's 1st Rezoning Application was on the agenda, and considered, at the public meetings of Defendant City's Board on the following dates: January 20, 2015 (public hearing); February 24, 2015 (Plaintiffs request continuance); March 31, 2015 (public hearing).

During the period between January 20, 2015 and March 31, 2015, at the suggestion and recommendation of City officials, Plaintiff's Proposed Development was further revised and amended.

At its May 19, 2015 meeting, the Board, by a vote of four (4) opposed and two (2) in favor, voted against Bill No. 2015-1788, a proposed ordinance to rezone the Subject Property from the "R-1" Residential zoning district classification to the "PD" (PDR) Planned Development Residential zoning district classification. As of May 19, 2015, the Rezoning Application contemplated a development with 36 (thirty six) villas, no townhomes, and a 108 (one hundred and eight) bed Assisted Living Facility.

On September 9, 2015, Stock, as agent for Plaintiff, filed a new "Application" with Defendant City seeking to have the zoning classification of the entire Subject Property changed from " R-1 " Residential to "PD" Planned Development Residential ["2"d Rezoning Application"]. The purpose of the requested rezoning identified in the 2"d Rezoning Application was development of

"a Senior Living Residential Community with thirty-four (34) Jack Arnold's Townhomes, [and] ... a 131-Bed Senior Living Facility."

At the time Plaintiff filed its 2nd Rezoning Application, Section 405.090 of Defendant City's Zoning Regulations, which establishes various land uses appropriate for certain zoning district classifications within Defendant City, expressly recognized "single family attached villas", "single family attached townhomes", and "senior living community (when the size and character of the development is compatible to the surrounding uses)" as permitted uses within properties zoned "PD" Planned Development District (PDR) [Planned Development Residential].

Pursuant to Section 405.220 of Defendant City's Zoning Regulation, Plaintiff's 2nd Rezoning Application was supposed to be submitted to the P&Z Commission of Defendant City for its recommendation and report. The 2nd Rezoning Application, however, was not submitted to the P&Z Commission at its next regularly scheduled meeting because on September 15, 2015, the Board approved Ordinance No. 2015-1767 imposing a 45-day, "moratorium on redevelopment or change of use of property located within the Clayton Road corridor from Lindbergh Boulevard to Spoede Road and between Clayton Road and Interstate 64 ("Study Area") in order to conduct an area study and possible

amendment to the comprehensive plan and zoning regulations and to request a recommendation from the Planning & Zoning Commission for a more extended moratorium on certain development activities in that study area."

On September 29, 2015, rather than consider the 2nd Rezoning Application as required by Section 405.220 of Defendant City's Zoning Regulation, the P&Z Commission considered the Board's recommendation for the aforesaid 45-day moratorium but the motion to impose the moratorium died for lack of a second.

Thereafter, the City Attorney addressed the P&Z Commission and recommended approval of a moratorium that would last for several months.

The P&Z Commission, over the objection of Plaintiff, recommended a six month moratorium for the Study Area, notwithstanding the facts that (a) Plaintiff's 2nd Rezoning Application was filed with the City prior to any recommendation by the Board for a moratorium that would impact the Subject Property; and (b) Defendant City had already requested, and received from PGAV in September 2012, a professional analysis of Subject Property land use options.

On October 20, 2015, the Board enacted Ordinance 2015-1770, an ordinance imposing a six-month moratorium on development or change of use of property located within the Study Area, which includes the Subject Property ["Moratorium"].

On February 19, 2016, after meeting with the P&Z Commission Subcommittee appointed to review the 2006 comprehensive plan and the Study Area, City Staff, including Building Commissioner/Zoning Administrator, John Morgan and City Administrator, Bob Shelton authored a certain staff report on Case No. PZ 111615-01 [the "Report"] that specifically (a) determined that, "any low density residential including villas or townhomes is not economically feasible [for the Subject Property]", and (b) recommended the Study Area as the site for an "assisted living" facility.

According to the Report, the P&Z Commission Subcommittee appointed pursuant to the Moratorium concluded that the vacant school building located on the Subject Property is appropriate for redevelopment because it is obsolete. The Subcommittee and City Staff further noted that the Subject Property, "is appropriate for Planned Residential as defined in the 2006 Comprehensive Plan" with "single family attached or detached villas of no more than two units" appropriate "for the area fronting on Clayton Road" and "more dense residential as allowed for in the Plan Development Residential (PDR) zoning classification of the City of Frontenac Municipal Code" appropriate for "the property with the lower elevation bordering I-64. The Report recommended the Board immediately terminate the Moratorium set to expire on its own terms April 20, 2016.

At its February 23, 2016 meeting, the P&Z Commission adopted the Report as its official recommendation to the Board.

On March 9, 2016, rather than accept and adopt the recommendations of the P&Z Commission in the Report, the Board instead called a special meeting in order to initiate proposed amendments to the Planned Development District that would delete the assisted living component from the Planned Development Residential District; create a new R-3 Villa Residence Zoning District; and unilaterally rezone the Subject Property to the newly created R-3 Villa Residence Zoning District despite the determination by the P&Z Commission that such use was not economically feasible for the Subject Property ["Board's 1st Rezoning Application"].

On April 11, 2016, the P&Z Commission considered the Board's 1st Rezoning Application to rezone the Subject Property, and moved to "drop" the Board's 1st Rezoning Application by a unanimous vote of 7-0.

On April 19, 2016, notwithstanding the recommendation in the Report and the P&Z Commission's April 11, 2016 decision to "drop" the Board's 151 Rezoning Application, the Board proceeded with its own application to amend the Planned Development Residential ("PDR") Zoning District such that it deleted from the permitted uses for the District, "senior living community"; created a new R-3 Villa Residence Zoning District permitting single family villas and other

permitted uses in the R-1 District; and rezoned the Subject Property to the newly created R-3 Villa Residence Zoning District without the property owner's consent or participation and despite the fact that Plaintiffs 2nd Rezoning Application had been pending for six months.

On April 20, 2016, the Moratorium expired by its own terms. Directly thereafter, the contract by which Plaintiff was seeking to purchase the Subject Property from the Ladue School District expired.

Plaintiff entered into new negotiations with Ladue School District to purchase the Subject Property and after a substantial increase in the purchase price was able to enter into a new contract in order to pursue its plans for development.

On June 7, 2016, Stock, as agent for Plaintiff, filed a new "Application" with Defendant seeking to have the zoning classification for the entire Subject Property changed from its new designation of "R-3" Villa Residence to "PDMXD" Planned Development Mixed Use District in order to" develop a Senior Living Community with twenty-four (24) villas ... [and] ... a 100-Bed Senior Living Facility."

Section 405.220 of Defendant City's Zoning Regulations permits "persons or entities having an ownership interest in properties within a particular zoning district" to petition Defendant City to "amend, supplement, change, modify or repeal the boundaries, restrictions and regulations" established by Defendant City's Zoning Regulations.

Defendant City's Zoning Regulations pertaining to the R-3 Villa Residence zoning district do not recognize senior living facilities or communities as a permitted use.

As an outgrowth of Defendant City's adoption of the 2006 Comprehensive Plan for Frontenac, whose recommendations were based on resident input, Section 405.090 of the Frontenac City Code was revised to include a "Planned Development Mixed Use" (PDMXD) District which expressly recognized "single family attached villas", "single family attached townhomes", and "senior living community (when the size and character of the development is compatible to the surrounding uses)" as permitted uses.

Notwithstanding the fact that on May 17, 2016, the Mayor and Board reappointed Mark Richert to serve as Chairman of the P&Z Commission, on June 21, 2016, six of the seven P&Z Commission Members (including its Chair, Mark Richert) that approved the Report and unanimously voted to "drop" the Board's 1st Rezoning Application were removed from the Commission and replaced with new members appointed by the Mayor and Board.

On June 21, 2016, in response to the 3rd Rezoning Application, the Board recommended removal of "senior living community" from the permitted uses for Planned Development Mixed Use District Regulations ("PDMXD") which

recommendation was referred to the newly reconstituted P&Z Commission by a vote of 5-1 ["Board's 2nd Rezoning Application"].

At the June 28, 2016 P&Z Commission meeting, all of the newly appointed members voted in favor of tabling Plaintiff's previously filed 3rd Rezoning Application seeking approval of a PDMXD zoning designation for a senior living community, and once tabled, unanimously voted to recommend approval of the Board's 2nd Rezoning Application designed to delete "senior living community" from the permitted uses in the PDMXD regulations.

Thereafter, on July 19, 2016, the Board approved its own application in Bill No. 2016-183 7 and thereby deleted "senior living community" from the permitted uses for the PDMXD District. Bill No. 2016-1837 further amended Subsection 405.090(D)(3)(c) of Article II of Defendant City's Zoning Regulations by expressly excluding "assisted living facilities" from the category of permitted "commercial uses which are complementary to mixed residential/commercial developments."

At its July 26, 2016 meeting, the newly constructed P&Z Commission removed Plaintiffs 3rd Rezoning Application from the table and promptly recommended a denial thereof.

On August 16, 2016, the Board unanimously voted to deny Plaintiff Grove's 3rd Rezoning Application.

In addition to the December 9, 2014 written Recommendation and Report of the Planning and Zoning Commission and the February 19, 2016 Report , materials made available to the Board of Aldermen of Defendant City prior to its March 9, 2016, April 19, 2016, July 19, 2016 and August 16, 2016 votes include:

A. the Clayton & Spoede Land Use Analysis Memorandum (9/8/1 2), prepared by PGA V, which includes the comments regarding possible residential redevelopment of the portions of the Subject Property formerly owned by the Ladue School District and more fully enumerated in Paragraph 17 above.

B. a Memorandum (11/6/14) regarding Plaintiffs initial Rezoning Application prepared by Development Strategies including the comments confirming the appropriateness of a development including villas, townhouses and an assisted living facility enumerated in Paragraph 27 above.

C. an additional Memorandum, by Development Strategies ( 4/4/ 15), which contains the following finding:

"5. The revised site plan for the 11-acre property [i.e., the Subject Property, and two adjacent one-acre parcels] complies with the Comp Plan and the Planned Development Residential zoning."

D. a Memorandum (assessing traffic access and parking availability with respect to Plaintiffs' proposed Subject Property redevelopment), by George Butler Associates, Inc. (4/18/15).

In Count II, Plaintiff seeks money damages under 42 U.S.C. § 1983. Plaintiff contends that its Fifth and Fourteenth Amendment rights have been violated under the due process and equal protection clauses. In that the Court has remanded Count I, Defendant's Motion now relates solely to Count II.

## Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Fed.R.Civ.P. 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir.2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir.2010).

## Discussion

Defendant argues that Count II must be dismissed because Plaintiff's allegations are insufficient to state a plausible claim. While several of Defendant's arguments have been rendered moot by the Court's April 6, 2017 Opinion, the Court agrees that as Count II stands, it fails to state a plausible claim.

Although Plaintiff argues that it is not stating an equal protection claim, the Petition refers to the equal protection clause of the Fifth Amendment. Plaintiff argues that it is not alleging a just compensation takings claim, but the allegations

of its Petition do not clearly so state, based on the factual allegations which Plaintiff sets out.

Plaintiff's Petition states that Plaintiff has exhausted its administrative remedies, however, the Petition does not set out what administrative remedies it has exhausted and why it is not required to exhaust other remedies, as Defendant correctly argues it must.

Moreover, Plaintiff's Petition does not set forth in which capacity the individual defendants are sued. Defendant is correct that if they are sued in their official capacity, the claims against them are redundant of the claim against the City of Frontenac, Missouri.

## Conclusion

Count II of the Petition, which was filed in the State Court, fails to satisfy the requirements of a federal Section 1983 claim. Under the standard of review, it cannot survive Defendant's challenge. Although Defendant requests the opportunity to review a request to amend, the Court is of the opinion that Defendant will not be prejudiced by allowing an amendment at this stage of the litigation. Upon the filing of its amendment, Defendant will have the opportunity to review it and proceed as it deems appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc No. 3], is **granted**.

**IT IS FURTHER ORDERED** that Count II of the Plaintiff's Petition is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted 14 days from the date of this Opinion to file an Amended Complaint.

**IT IS FURTHER ORDERED** that if the Amended Count II subsequently survives challenge, the Court will continue to hold Count II in abeyance until resolution of the State determination of Count I.

Dated this 1st day of September, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE