UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE GROVE ASSISTED LIVING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF FRONTENAC, MISSOURI, A | ) | |
| MUNICIPAL CORPORATION AND A | ) | |
| POLITAL SUBDIVISION OF THE STATE OF | ) | Case No. 4:16-CV-1783 HEA |
| MISSOURI, AND ITS MAYOR KEITH | ) | |
| KRIEG AND BOARD OF ALDERMEN | ) | |
| CHRIS KEHR, TOM O'BRIEN, MARGOT | ) | |
| MARTIN, BUD GUEST, JOHN T. | ) | |
| O'CONNELL, MIKE SCHOEDEL, DAVID | ) | |
| BRAY, AND BRIAN WARNER, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's

First Amended Petition, [Doc. No. 29].   Plaintiff opposes the Motion.  Having

determined that this Court has subject matter jurisdiction, and for the reasons set

forth below, the Motion will be granted based on a failure of Plaintiff to state a

claim upon which relief can be granted.

## Facts and Background

The Court has previously summarized the facts alleged by Plaintiff in its previous Opinion, Memorandum and Order granting Defendants' Motion to Dismiss, [Doc. No. 25].

Plaintiff's amendments to the Petition include: 1) citing to the federal venue statute [Doc. No. 26, ¶ 4]; stating the full name of PGAV (*id.* at ¶ 17); stating Plaintiff's option contract expired (*id.* at ¶ 19); adding the R-3 zoning districts do not "expressly" recognize senior living facilities or communities as a permitted use (*id.* at ¶ 57); removal of reference to the equal protection clause; claims that Defendants cannot impose different standards than what is prescribed in R.S.Mo. § 89.010, et seq. (*id.* at ¶ 67); allegations against the Mayor and Board of Aldermen ("Defendant Board Members") in their individual capacities (*id.* at ¶ 67); expressly stating "Plaintiff does not allege a just compensation takings claim (*id.* at ¶ 69); allegations regarding the alleged exhaustion of administrative remedies (*id.* at ¶ 69); that conduct was arbitrary, capricious, and unreasonable (*id.* at ¶ 70); and that a delay in the approval process was designed to interfere with Plaintiff's contractual rights (*id.* at ¶ 70.H.).

## Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions

"which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678. Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Fed.R.Civ.P. 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n. 4 (8th Cir.2010) (internal citation

3

omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir.2010).

Further, this Court may conduct a rational basis review at the motion to dismiss stage, as

> the law is well settled in the Eighth Circuit that district courts may conduct rational basis review at the motion to dismiss stage. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). The policy underlying the law is logical: "because all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development in order to conduct a rational basis review on a motion to dismiss." *Gilmore v. Cty. of Douglas, State of Neb.*, 406 F.3d 935, 937 (8th Cir. 2005) (internal quotations omitted).

*Johnson v. City of Little Rock*, 164 F. Supp. 3d 1094, 1100 (E.D. Ark. 2016); *see also Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) ("Additionally, Appellants are incorrect in their contention that this issue cannot be decided on a motion to dismiss").

**Plaintiff has failed to state a recognized claim under the Missouri Constitution.**

Plaintiff has alleged Defendants have violated the due process clause of the Missouri Constitution, [Doc. No. 26, ¶¶ 66, 68, 70]. Plaintiff has conceded in its Memorandum in Opposition that it does not seek any remedy under the Missouri

Constitution, [Doc. No. 26, p. 15]. As this claim is abandoned and as, unlike the federal legislature's enactment of 42 U.S.C. § 1983, Missouri has not enacted any enabling statute for said provision,[1] allegations concerning the Missouri Constitution fail to state a claim upon which relief may be granted.

### Plaintiff has failed to state a claim under 42 U.S.C. § 1983 pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution.

Section 1983 is a remedial statute allowing for a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999). Therefore, in evaluating a § 1983 claim, the

---

[1] *See Johnson v. City of Hazelwood*, 2014 WL 7338811, at *5 (E.D. Mo. Dec. 22, 2014); *Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo.App. E.D.1997); *see also Collins–Camden Partnership, L.P. v. County of Jefferson*, 425 S.W.2d 210, 214 (Mo.App. E.D. 2014); *USOC of Greater Mo. v. County of Franklin*, 2008 WL 2065060, at *3 (E.D. Mo. May 14, 2008).

precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 796 (8th Cir. 1998).

The Court will address Plaintiff's failure to state a claim under each of the three kinds of claims under 42 U.S.C. § 1983 which may be raised under the Due Process Clause of the Fourteenth Amendment.

  a. Violation of a right incorporated via the Bill of Rights;

  b. Substantive due process regarding certain wrongful government actions; and

  c. Procedural due process regarding a deprivation of life, liberty, or property without a fair procedure.

*See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

**Plaintiff has failed to state a claim for violation of any incorporated right.**

The only other amendment alluded to in Plaintiff's Amended Petition is the Fifth Amendment, despite Plaintiff's specific contention it does not purport to raise a takings claim, [*see*, Doc. No. 26, ¶¶ 66–68]. Accordingly, Plaintiff fails to state a claim upon which relief can be granted regarding the Fifth Amendment as the Fifth Amendment's due process clause applies only to federal entities. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1006, n.2 (8th Cir. 2009) ("The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and

the Plaintiffs have not alleged that the federal government or a federal action deprived them of property.").

> **Plaintiff has failed to state a claim under 42 U.S.C. § 1983 pursuant to the substantive due process clause.**

As an initial matter, Plaintiff has conceded that it is not challenging any claim under the substantive due process clause regarding any executive decision, [Doc. No. 38, p. 22]. Accordingly, this Court reviews the alleged legislative actions pursuant to *Griswold v. Connecticut*, 381 U.S. 479 (1965)) rather than *Rochin v. California*, 342 U.S. 165 (1952) (executive action). *See*, *Shrum ex rel. Kelly v. Kluck*, 85 F.Supp.2d 950, 960 (D. Neb. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).

The substantive due process clause regarding legislative action requires a two-step process where Plaintiff must show the following: 1) an unenumerated fundamental right (one which is, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if it were sacrificed; and 2) the law infringing on any fundamental right survives strict scrutiny—the law must be narrowly tailored to serve a compelling state interest. *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1017 (8th Cir. 2012); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). Plaintiff has not argued it has any fundamental liberty interest at stake, [Doc. No. 38, p. 16]. Accordingly, the legislative acts at issue need only be "rationally related to legitimate government interests." *Wash. v. Glucksberg*, 521 U.S. 702, 728 (1997). To prevail on a facial challenge, the plaintiffs bear the burden of "establish[ing] that no set of circumstances exist under which [the legislation] would be valid." *Karsjens v. Piper*, 845 F.3d 394, 409 (8th Cir. 2017). This rational or "[r]easonable relationship review is highly deferential to the legislature." *Id.* Under a rational basis review,

> a court must reject an equal protection challenge to a statutory classification 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Indeed, a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data. Thus, because all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development. In other words, a district court may conduct a rational basis review on a motion to dismiss.

*Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (internal quotations and citations omitted); *see also DeCrow v. N.D. Workforce Safety & Ins. Fund*, 864 F.3d 989, 992 (8th Cir. July 31, 2017) ("A rational basis that survives equal

protection scrutiny also satisfies substantive due process analysis.") (internal

quotations and citation omitted).

With these standards in mind, the Court also must reconcile the issues

presented in this case. "[Z]oning power is not infinite and unchallengeable; it 'must

be exercised within constitutional limits.' " *Schad v. Borough of Mount Ephraim*,

452 U.S. 61, 68 (1981) (quoting *Moore v. E. Cleveland*, 431 U.S. 494, 514 (1977)

(Stevens, J., concurring)).

Though *Chesterfield Dev. Corp. v. Chesterfield*, 963 F.2d 1102 (8th Cir.

1992) was decided before *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)),[2]

the case is instructive. The *Chesterfield* Court addressed substantive due process

claims by a corporation alleging the City of Chesterfield sought to enforce an

invalid zoning plan and ordinance depriving the corporation of property without

due process of law. *Chesterfield.* 963 F.2d at 1103. Specifically, the City of

Chesterfield failed to provide proper notice before adopting a comprehensive

zoning plan and a zoning ordinance, failed to file the plan with the appropriate

Recorder of Deeds Office, and therefore acted in a way that rendered the plan

invalid under Missouri law. *Id.* The corporation entered into a contract to buy real

property in the City of Chesterfield, contingent upon the property's being rezoned

by the City of Chesterfield. *Id.* The corporation filed a petition for rezoning which

---

[2] *Chesterfield* was recently cited with approval by the Eighth Circuit in *Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. July 31, 2017).

was denied by the City of Chesterfield City Council. *Id.* As a result, the corporation was unable to buy the real property. *Id.* United States District Judge Hamilton dismissed the complaint for failure to state a claim. *Id.*

The Eighth Circuit affirmed dismissal of the complaint, holding a federal court "should not . . . sit as a zoning board of appeals[,]" that the violation of state law alone (even if done so knowingly and in bad faith) is insufficient to allege a substantive due process claim arising out of a zoning dispute, and that plaintiff's allegations were not the "kind of 'truly irrational' governmental action which gives rise to a substantive-due-process claim." *Id.* at 1104–05 (first quotation of *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). It is not enough that a claim alleges "arbitrary, capricious, or [conduct] in violation of state law." *Id.* at 1104.

The Third Circuit Court of Appeals has stated complaints regarding certain kinds of actions, including "delay[ing] certain permits and applications," were "examples of the kind of disagreement that is frequent in planning disputes." *See CEnergy-Glenmore Wind Farm #1, LLC v. Town of Glenmore*, 2013 WL3354511 (E.D. Wis. July 3, 2013) (citing *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)), *aff'd.* 769 F.3d 484 (7th Cir. 2014). Specifically, the dispute in *Eichenlaub* pertained to a "contentious zoning dispute" between a family-owned business and the Township of Indiana, PA, involving substantive due process and

equal protection allegations. *Eichenlaub*, 385 F.3d at 277. The court found there were no allegations of corruption or self-dealing on the part of the township when addressing the redevelopment of seven lots of land, and found the district court did not abuse its discretion in dismissing plaintiff's substantive due process claim. *Id.* This holding has been followed by other District Courts. *See, e.g., CEnergy-Glenmore*, 2013 WL 3354511 at * 5 ("If inaction and delay on the part of government officers and representatives is enough to shock the judicial conscience, the sea of substantive due process claims would flood the courts beyond what even the most vociferous proponents of substantive due process could imagine.").

Plaintiff allege that on September 15, 2015, the Board approved an ordinance imposing a forty-five day

> moratorium on redevelopment or change of use of property located within the Clayton Road corridor from Lindbergh Boulevard to Spoede Road and between Clayton Road and Interstate 64 ("Study Area") in order to conduct an area study and possible amendment to the comprehensive planning and zoning regulations and to request a recommendation from the Planning & Zoning Commission for a more extended moratorium on certain development activities in that study area.

[Doc. No. 26, ¶ 40]. On September 29, 2015, the P&Z recommended an extension of the moratorium for a six-month period (*id.* at ¶¶ 41–43), which was approved by the Board via ordinance on October 20, 2015 (*id.* at ¶ 44). On April 11, 2016, the Board removed "senior living community" from Planned Zoning District ("PDR")

(*id.* at ¶ 51), and Plaintiff fails to allege Plaintiff pursued the second application to a vote by the Board after the expiration of the moratorium and removal of "senior living community" from the permitted uses of PDR.

Plaintiff's third application was alleged to have been filed on or about June 7, 2016. Am. Pet. ¶ 55. On June 21, 2016, the Board referred the matter to the Planning and Zoning Commission to consider removing "senior living facility" from permitted uses. *Id.* at ¶ 60. On June 28, 2016, the P&Z recommended removal of "senior living community from the permitted uses in the PDMXD regulations. *Id.* at ¶ 61. On July 19, 2016, the Board passed an ordinance removing "senior living community" from the permitted uses contained in PDMXD (*id.* at ¶ 62). On July 26, 2016, the P&Z recommended denial of Plaintiff's third application, and on August 16, 2016, the Board unanimously voted to deny Plaintiff's third application (*Id.* at ¶¶ 63–64).

Plaintiff has alleged challenges to delays in considering rezoning applications (including the imposition of a moratorium),[3] the removal of language from the PDR and PDMXD ordinances (in order to defeat Plaintiff's pending application), the replacement of P&Z members, taking the rezoning applications out of order, rezoning the property without its consent or the owner's consent with

_____

[3] Plaintiff does not specify what delay resulted in removal of certain permitted uses, and Plaintiff did not allege the removal of any permitted uses in the first application.

a pending application,[4] delaying the process to interfere with contractual rights, and denying Plaintiff's rezoning applications.  *Id.* at ¶ 71.

As a matter of law at the pleadings stage, the subject legislative actions meet the highly deferential rational basis review in that the actions were reasonably related to legitimate government interest.  Specifically:

- There was a rational basis, as stated in both the ordinances and public meetings for the passage of a moratorium, to assist in providing a proper land use study, effective community engagement, comprehensive plan update and design of any necessary new zoning regulations to proceed in an orderly and efficient manner, [*see*, Doc. No. 26, ¶¶ 70.A., 70.D., 70.H., and 70.I.];[5]

---

[4] Plaintiff has not alleged how it has standing to challenge rezoning the property without the owner's consent, or how rezoning the property without its consent affected its rezoning applications.

[5]  All exhibits referred hereinafter refer to public records attached by Defendants based on the number assigned by Defendants.

*See* ex. 1, Ordinance No. 2015-1768 (forty-five day moratorium with purposes stated); ex. 2, Sept. 15, 2015, Board Meeting Minutes (providing public discussion for reasons for passing forty-five day moratorium); ex. 3, Sept 29, 2015, P&Z Meeting Minutes (providing discussion for reasons for passing motion to recommend extension of moratorium for six months), ex. 4, Ordinance No. 2015-1770 (extending moratorium to six months with purposes stated); ex. 5, Oct. 20, 2015, Board Meeting Minutes (providing public discussion for reasons for extending moratorium to six months); ex. 6, Feb. 23, 2016, Board Meeting Minutes (providing public discussion for reasons to end moratorium on originally scheduled expiration date).

- There was a rational basis, as stated in both the ordinances and public meetings, to remove "senior living community" from the permitted uses for the PDR and PDMXD regulations, [*see*, Doc. No. 26, ¶¶ 70.B.];[6]

- There was a rational basis, as stated in the public meeting minutes, for the Mayor to replace six of the seven members of the P&Z, as the term limits members had expired, [*see*, Doc. No. 26, ¶¶ 70.C.];[7]

- There was a rational basis, as stated in the meeting minutes and ordinance, to rezone the subject property from R-1 to R-3 classification in light of market support and the City's vision with respect to its comprehensive plan, [*see*, Doc. No. 26, ¶¶ 70.A., 70.E., 70.F., and 70.G.];[8] and

---

[6] *See* ex. 7, Ordinance No. 2016-1782 (removing "senior living community" from PDR classification to maintain essential character of classification, finding professional care facilities are more akin to commercial rather than single family residences, etc.); ex. 8, Mar. 9, 2016, Board Meeting Minutes (referring matter to remove "senior living community" PDR classification to P&Z for recommendation); ex. 9, Apr. 11, 2016, P&Z Minutes (no action taken until plan comes forward and leave to Board); ex. 10, Apr. 19, 2016, Board Meeting Minutes (providing discussion for reasons for removing "senior living facility" from PDR classification); ex. 11, Ordinance No. 2016-1798 (removing "senior living community" from PDMXD classification to be clear regarding the essential character of the classification, senior living communities are ill suited to mixed use developments the City seeks to foster by its zoning standards, etc.); ex. 12, June 21, 2016, Board Meeting Minutes (referring matter to remove "senior living community" PDMXD classification to P&Z for recommendation); ex. 13, June 28, 2016, P&Z Minutes (providing discussion and unanimous vote to remove "senior living community" from PDMXD classification); ex. 14, July 19, 2016, Board Meeting Minutes (voting to remove "senior living community" from PDMXD classification).

[7] Ex. 15, May 17, 2016, Board Meeting Minutes (discussing question on term limits of P&Z members); ex. 12, June 21, 2016, Board Meeting Minutes (containing appointments of five members to P&Z); ex. 16, Roster of Planning & Zoning Commission dated July 10, 2015 (showing expiration dates for five P&Z members by June 30, 2016, with addresses, numbers, and e-mail addresses redacted) ; ex. 17, Ordinance No. 2010-1630 (stating no resident member may serve for terms of more than four years each).

[8] Ex. 18, Ordinance No. 2016-1783 (rezoning subject property from R-1 to R-3 classification, finding market support for rezoning and rezoning accomplished vision expressed in Comprehensive Plan); ex 8, Mar. 9, 2016, Board Meeting Minutes (referring matter to rezone R-1 to R-3 classification to P&Z for recommendation); ex. 9, Apr. 11, 2016, P&Z Minutes (recommending rezoning subject property from R-1 to R-3 classification); ex. 10, Apr. 19, 2016, Board Meeting Minutes (providing discussion for reasons for rezoning subject property from R-1 to R-3 classification).

- There was a rational basis, as stated in the meeting minutes, for the
denials of Plaintiff's first and third applications to rezone the subject
property (Plaintiff did not pursue the second application to a vote after
the moratorium was lifted). Specifically, the first was supported by
extensive discussion (including exhibit B to the minutes weighing "pros"
and "cons").[9] The vote to deny the third application was reasonable to a
legitimate government purpose as the assisted living facility (senior
living community) had been specifically removed from the PDMXD
classification, [*see*, Doc. No. 26, ¶¶ 70.J.].[10]

With respect to any delay or the imposition of a moratorium, *Chesterfield*,
*Eichenlaub*, and *CEnergy-Glenmore* are instructive to show no fundamental right
has been violated. *See also Ecogen, LLC v. Town of Italy*, 438 F.Supp.2d 149,
152–53 (W.D.N.Y. 2006) (affirming dismissal finding facial challenge failed

---

[9] Ex. 19, June 12, 2014, P&Z Minutes (discussing concerns including density of proposed development with addresses, numbers, and e-mail addresses redacted); ex. 20, June 24, 2014, P&Z Minutes (further consideration regarding the proposed development); ex. 21, July 22, 2014, P&Z Minutes (concerns regarding aesthetics, density, parking, etc.); ex. 22, Aug. 26, 2014, P&Z Minutes (concerns regarding density, etc.); ex. 23, Sept. 23, 2014, P&Z Minutes (density, location of proposed assisted living facility, aesthetics, traffic, parking, etc.); ex. 24, Nov. 12, 2014, P&Z Minutes (report regarding roof height and sight distance, green space, setbacks, etc.); ex. 25, Jan. 20, 2015, Board Meeting Minutes (concerns regarding density); ex. 26, Feb. 17, 2015, Board Meeting Minutes (further discussion, including suggestion for survey among residents); ex. 27, Mar. 31, 2015, Board Meeting Minutes (concerns regarding traffic, setbacks, ingress and egress, grading, location of proposed assisted living facility, further statements in support and in opposition of the rezoning); ex. 28, Apr. 21, 2015, Board Meeting Minutes (concerns regarding "traffic, parking, number of employees, the comp plan and the finances"); ex. 29, May 19, 2015, Board Meeting Minutes (containing exhibits A and B, read into the record, weighing of pros and cons, vote 4-2 denying Plaintiff's first application to rezone the subject property).

[10] Ex. 30, July 26, 2016, P&Z Minutes (referencing removal of "senior living community" and how third application did not fit within scope of PDMXD classification, unanimously recommending denial of third application); ex. 31, Aug. 16, 2016, Board Meeting Minutes (statement by Alderperson David Bray as an exhibit to the minutes, finding commercial zoning elsewhere could potentially allow for the development, recommendation by P&Z stated, unanimously denying third application).

because the moratorium was not so egregious as to violate the substantive due process clause and that two-year duration of moratorium on the construction of wind turbine towers, relay stations, and or other support facilities was reasonable); *Bronco's Entm't v. Charter Twp. Of Van Buren*, 421 F.3d 440, 443 (6th Cir. 2005) (finding 182-day moratorium regarding moratorium on acceptance of new plans to open topless bar was of reasonably short duration and did not violate plaintiff's due process rights).

Plaintiff's new allegations in the Amended Petition regarding a delay intended to interfere with contractual rights should be dismissed for the same reasons, [*see*, Doc. No. 26, ¶¶ 70.H]. The Supreme Court has "repudiated the *Lochner v. New York*, 198 U.S. 45. . . (1905) and *Adkins* line of cases that upheld the liberty of contract as an interest protected by substantive due process." *Prime Healthcare Servs. v. Harris*, 216 F.Supp.3d 1096, 1112 (S.D. Cal. 2016); *see also Washington v. Glucksberg*, 521 U.S. 702, 727 (1997) (history of substantive due process fundamental rights); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400 (1937) (rejecting *Lochner* era holdings). Further, to the extent Plaintiff purports to state a claim under the Contracts Clause, courts have found allegations regarding a public entity's zoning ordinances do not affect the contractual obligations between a developer and a third-party for purposes of the Contracts Clause. *Two Tenn., LLC v. City of N. Little Rock*, 2006 WL 2460926, at * 2 (E.D. Ark. Aug. 23, 2006);

*see also Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F.Supp. 1471 (1492) (N.D. Iowa 1995); *Bannum, Inc. v. City of St. Charles*, No. 90-0667-C(4), 1992 WL 521779, at * 4 (E.D. Mo. Oct. 15, 1992) ("The zoning ordinance acted solely on the property, not on the terms of the contract, and therefore does not impair any contractual obligations.") (*aff'd*, 2 F.3d 267 (8th Cir. 1993); *Metro. St. Louis Sewer Dist. v. Ruckelshaus*, 590 F.Supp. 385, 389 (E.D. Mo. 1984) (". . . the challenged law must act on the contract itself as distinguished from the property which is the subject of the contact.").

Plaintiff's allegation that Defendants' actions regarding zoning and rezoning were "truly irrational" constitutes an argumentative legal conclusion that should not be accepted by this Court (*see Iqbal*, 556 U.S. at 678). *See*, *Chesterfield*, 963 F.2d 1102, 1104 ("An example [of a truly irrational government action] would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet."). Plaintiff has no fundamental right in the order in which pending matters will be considered by the Board, and even allegations regarding "knowingly enforce[ing an] invalid zoning in bad faith" or that the ordinances were "in violation of state law" are insufficient to allege a substantive due process claim. *Id.* at 1105; [Doc. No. 26, ¶¶ 57–58 (alleging Defendants' departure from Chapter 89.010 *et seq.* R.S.Mo)]; *see also*, *Prewitt v. Camden Cty.*, 2010 WL 3927807, at * 9 (W.D. Mo. Oct. 4, 2010) (Reexamination

of decisions denying rezoning applications "would convert the Due Process Clause into a 'constitutional Administrative Procedures Act setting up the federal courts as a forum for review of every run-of-the-mill land-use dispute.'") (quoting *Lemke v. Cass County*, 846 F.2d 469, 472 (8th Cir. 1987) (Arnold, J., concurring)).  In addition, Plaintiff has no fundamental right in the Mayor's replacement of P&Z members.

As these legislative actions do not violate any rights of Plaintiff, Count II of Plaintiff's First Amended Petition should be dismissed for failure to state a claim regarding the substantive due process clause.

> **Plaintiff has failed to state a claim upon which relief can be granted regarding the procedural due process clause.**

"To assert a claim for a violation of procedural due process, the plaintiff must allege '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *Harrington v. Seward Cty.*, 2017 WL 1080931, at * 7 (D. Neb. Mar. 22, 2017) (quoting *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965–66 (8th Cir. 2015)).  "The procedural due process requirement of notice and hearing is not applicable to a legislative body in the performance of its legislative functions." *Q.C. Constr. Co. v. Gallo*, 649 F. Supp. 1331, 1335 (D.R.I. 1986); (citing *North*

*Laramie Land Co. v. Hoffman*, 268 U.S. 276, (1925) and *Golden Gate Corporation*

*v. Sullivan*, 112 R.I. 641, 314 A.2d 152 (1974)); *see also River Park v. City of*

*Highland Park*, 23 F.3d 164, 166 ("We know from *Eastlake v. Forest City*

*Enterprises, Inc.*, 426 U.S. 668 [] (1976), that the procedures 'due' in zoning cases

are minimal.").

In *Harrington*, the plaintiffs sought to potentially buy land for the purpose of

operating an adult entertainment juice bar. *Harrington,* 2017 WL 1080931 , at *1.

Though the zoning ordinance in effect at the time specifically excluded adult

entertainment venues, a zoning administrator assured plaintiffs the respective

powers would approve an application for rezoning. *Id.* Plaintiffs submitted a

petition for rezoning and a conditional use permit. *Id.* at *1. Plaintiffs alleged the

county intentionally delayed his application, held secret meetings, and passed a

new ordinance further regulating adult establishments. *Id.* at *2. Plaintiffs alleged

the new ordinance was specifically designed to prohibit plaintiffs from opening

and operating the juice bar, and that they were required to relinquish their purchase

option for the subject property. *Id.* The district court granted the county's motion

to dismiss plaintiff's claims regarding the procedural due process clause.[11] The

*Harrington* Court pointed out plaintiffs had to have "a constitutionally cognizable

property interest in a right or a benefit" in the event plaintiffs had "a legitimate

---

[11] The *Harrington* Court found plaintiffs did not clearly allege a substantive due process claim, but stated such a claim would be dismissed even if stated. *Id.* at 19 n.5.

claim of entitlement to it." *Id.* at *9. This required that plaintiffs "clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Id.* at *7. The court rejected plaintiffs pleaded such a protectable property interest, as "nothing in the County's 2007 ordinance entitled Harrington to believe that the County *would*—much less *must*—*approve* his application. *Id.* (original emphasis) (quoting *Walker v. City of Kansas City, Mo.*, 911 F.2d 80, 94 (8th Cir. 1990)). Further, the court stated, "And because Harrington had no legitimate expectation of entitlement to rezoning or conditional use, it follows that he did not have a constitutionally protected interest in exercising his option to purchase the property." *Id.* at *8 (citing *Smith-Berch, Inc. v. Baltimore County*, 68 F. Supp. 2d 602, 628 (D. Md. 1999) (finding no property interest when lease was allegedly "forcibly forfeited" because the contingency of local zoning permission to operate the desired business was denied)).

Similarly, in *Prewitt*, plaintiffs alleged they had a constitutionally-protected property interest in two rezoning applications which were denied and an option contract which failed due to the denial of their rezoning applications. *Prewitt*, 2010 WL 3927807at *1–*14 (W.D. Mo. Oct. 4, 2010). The district judge found plaintiffs did not have a constitutionally-protected property interest in the rezoning of the property, as "nothing in the law entitled Prewitt to believe that Defendants 'would—much less must—approve his application.'" *Id.* at *8 (quoting *Walker v.*

*City of Kansas City, Mo.*, 911 F.2d 80, 94 (8th Cir. 1990)); *see also Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 72 F. Supp. 3d 967, 973 (E.D. Mo. 2014) (finding invitation to bid did not result in a legitimate claim of entitlement to an award of a contract).

Here, Plaintiff has not sufficiently pleaded any of the elements of a procedural due process claim.  It has not pleaded the Board had substantive limitations on official discretion when the Board considered Plaintiff's applications for rezoning.  *See Walker*, 911 F.2d at 94.  Indeed, though an ordinance may state, "In the interpretation and application of the provisions of this Chapter, such provisions shall be held to be the minimum requirements adopted for the promotion of health, safety, morals, or the general welfare of the community," such do not constitute substantive limitations "necessary to call the Due Process Clause into play."  *Id.* Further, Plaintiff has alleged it voiced an objection to the moratorium [Doc. No. 26, ¶ 43], and that the applications received a vote regarding the first and third applications.  Plaintiff did not allege it pursued the second application to a vote (as the ordinance had changed), and thus (even further than argued above) could not state Defendants deprived Plaintiff of any protectable interest.  Finally, Plaintiff has not identified what procedural rights would be adequate prior to depriving it of any interest, or the source of the same.

Accordingly, Plaintiff has failed to state a claim regarding the procedural due process clause, Count II is accordingly dismissed.

### Defendant Board Members are entitled to qualified immunity regarding the alleged conduct.

Federal law provides that government officials engaging in discretionary functions have qualified immunity from suits in their individual capacities for money damages, unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity shields public officials and reduces "the risks that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The applicability of qualified immunity is a question of law and, "the burden is on the plaintiff to plead *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find the defendant [public official] has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008). (Emphasis in original) There is a two-part inquiry to determine whether a § 1983 action can proceed in the face of an assertion of qualified immunity. *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009). The first part is whether the government official's conduct violated a constitutional right. *James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir.

2006); *Burton v. Richmond*, 370 F.3d 723, 727 (8th Cir. 2004). The second part is to determine whether the right was clearly established. *James*, 458 F.3d at 730; *Burton,* 370 F.3d at 727. If the answer to either question is no, then the Board Members are entitled to qualified immunity. *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). The Court may exercise its sound discretion in deciding which of these two parts should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Individual defendants are entitled to qualified immunity unless their alleged conduct violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law is "clearly established" if it gives the defendant official "fair warning" that his conduct violated an individual's rights when the official acted. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In other words, a reasonable official would understand that his conduct violated the law. Qualified immunity allows public officials "to make reasonable errors so they do not always 'err on the side of caution'" for fear of being sued. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (internal citation omitted). Qualified immunity provides "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "Although the defendant bears the burden of proof for this

affirmative defense [of qualified immunity], the plaintiff must demonstrate that the law was clearly established." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014).

As the case law discussed above indicates, the law regarding whether the time between the applications and any determination, the moratorium, the decision to rezone the subject property, the decisions to deny Plaintiff's applications to rezone, the replacement of P&Z members, and the amendments to the ordinances was not clearly established to have constituted a violation to Plaintiff's due process rights (either substantive or procedural). As the circumstances alleged by Plaintiff do not constitute any clearly established fundamental right or protectable interest violated in a truly irrational or conscience-shocking way, Defendant Board Members are entitled to qualified immunity.[12]

### Defendant Board Members are entitled to absolute (legislative) immunity regarding the alleged conduct.

As the Eighth Circuit has summarized:

> After noting that state and regional legislators possessed absolute immunity for their legislative activities, the Supreme Court held in *Bogan v. Scott-Harris* that "local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities." 523 U.S. at 49. "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial

---

[12] To the extent Plaintiff's Amended Petition can be construed to allege the City was deliberately indifferent to any rights (Doc. No. 26, ¶ 72), the City is entitled to dismissal as the rights of which Plaintiff complains were not clearly established at the time of the alleged conduct. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010); *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 394 (8th Cir. 2007).

interference or distorted by the fear of personal liability." *Id.* at 52. This "immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id.* at 54 (quoting *Tenney* [*v. Brandhove*], 341 U.S. [367, 376 (1951)].

"When determining whether an act is legislative, the Supreme Court applies a functional test." *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013). Under this test, "'[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.'" *Id.* (alteration in original) (quoting *Bogan*, 523 U.S. at 54). "A legislator's potential or alleged motives are 'wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity.'" *Id.* at 313–14 (alterations in original) (quoting *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 90 (2d Cir. 2007)). Therefore, the primary question is "whether, stripped of all considerations of intent and motive, [the] actions were legislative." *Bogan*, 523 U.S. at 55.

Certain actions—such as voting for an ordinance—are by their nature "quintessentially legislative." *Id.* At the most basic level, "[l]egislation . . . looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Leapheart*, 705 F.3d at 313 (second alteration in original) (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 53 L. Ed. 150 (1908)) (internal quotation marks omitted).

*Young v. Mercer Cnty. Comm'n*, 849 F.3d 728, 733 (8th Cir. 2017) (finding commissioners were entitled to legislative immunity for passing 911 ordinance).

The Eighth Circuit has held where the district court has found the passage of a zoning ordinance to be a legislative act, legislative immunity barred suit against municipal legislators. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 613 (8th Cir. 1980).

Here, Plaintiff has alleged ten different aspects in which they raise "a facial attack on a final legislative decision." [Doc. No. 26, ¶ 69]. These include complaints regarding voting to rezone the property from R-1 to R-3, voting to deny rezoning applications,[13] and voting to pass an ordinance placing a moratorium to halt determination of applications during a study-period.[14] Pursuant to the above case law, Defendant Board Members are entitled to absolute immunity pertaining to their legislative decisions.

### Plaintiff has failed to state a claim against the City and the City is immune from punitive damages under 42 U.S.C. § 1983.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior." *Andrews v. Fowler*, 98 F.3d 1069, 1074–75 (8th Cir. 1996) (*quoting Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). A municipality may be liable under § 1983 for the unconstitutional acts of its employees if some custom or policy of the municipality was the moving force behind the constitutional violation. *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). A plaintiff must make a

---

[13] *See supra*.

[14] *See LaConner Assocs. Ltd. Liab. Co. v. Berg*, 73 F. App'x 994, 996 (9th Cir. 2003) (affirming dismissal based on legislative immunity pertaining to moratorium ordinance halting development); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 492 (S.D.N.Y. 2015) (village board of trustees member voting for moratorium was engaged in legislative action and entitled to absolute immunity); *Deshotels v. Vill. of Pine Prairie*, No. 11-CV-2052, 2012 U.S. Dist. LEXIS 68029, at *14 (W.D. La. Apr. 12, 2012) ("Actions such as enacting ordinances, confecting and enforcing zoning restrictions, or construction moratoria are protected by absolute legislative immunity.").

showing regarding the fault of the municipality and a causal link between the

municipal policy and the alleged violation, whereby there exists a municipal policy

that violates federal law on its face or evidence that the municipality has acted with

"deliberate indifference" to an individual's federal rights.  *See  Ware v. Jackson*

*County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

Plaintiff must: (1) identify an officially promulgated policy of defendant, or

(2) identify an unofficial custom or practice, usually shown through the repeated

acts of the final policymaker of defendant. *See St. Louis v. Praprotnik*, 485 U.S.

112, 121 (1988); *Monell*, 436 U.S. at 690–91; *Mettler v. Whiteledge*, 165 F.3d

1197, 1204 (8th Cir. 1999); *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th

Cir. 1998); *Marchant v. City of Little Rock, Arkansas*, 741 F.2d 201, 2014 (8th Cir.

1984).

To state a municipal liability claim under an "inaction" theory, a plaintiff

must establish 1) the existence of a clear and persistent pattern of constitutional

violations; 2) notice or constructive notice on the part of the municipality; 3) the

municipality's tacit approval of the unconstitutional conduct, such that its

deliberate indifference in its failure to act can be said to amount to an official

policy of inaction; and 4) that the municipality's custom was the "moving force" or

direct causal link in the constitutional deprivation.  *See id.*; *see also City of Canton*

*v. Harris*, 489 U.S. 378, 388–89 (1989).

Plaintiff has not pleaded a custom or practice, but policies via zoning ordinances and decisions regarding the same. For the reasons stated above, Plaintiff has failed to show any officially promulgated policy violated any constitutional right of Plaintiff. In addition, Plaintiff's allegation regarding punitive damages against the City should be dismissed due to immunity stated in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982).

## Conclusion

Count II of the Petition fails to sufficiently allege facts which would confer subject matter jurisdiction upon this Court. Under the standard of review, it cannot survive Defendants' facial challenge.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 29], is **granted.**

**IT IS FURTHER ORDERED** that Count II of the Plaintiff's First Amended Petition is **DISMISSED**.

Dated this 22nd day of June, 2018.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE